IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEBORAH LIND, et al.,

          Plaintiffs,

    v.

NEW HOPE PROPERTY, LLC, et
al.,

          Defendants.

HON. JEROME B. SIMANDLE

Civil No. 09-3757 (JBS/KMW)

**OPINION**

APPEARANCES:

Andrew M. Smith, Esq.
SMITH MARCINO & BOWMAN
208 N Easton Road
Willow Grove, PA 19090
    Counsel for Plaintiffs
    Deborah Lind, Patrick
    Lind, Sr., Patrick Lind,
    Jr., Eileen Fisher,
    Daniel Cullen, Tricia
    Curiale, Sandra Valdez,
    and Charles Heineman

Diane A. Bettino, Esq.
REED SMITH, LLP
225 Fifth Avenue
136 Main Street
Suite 1200
Pittsburgh, PA 15222
    Counsel for Defendants
    Wells Fargo Bank, NA and
    Wachovia Mortgage, FSB

Brian M. Fleischer, Esq.
FLEISCHER & FLEISCHER
Plaza 1000 at Main Street
Suite 208
Voorhees, NJ 08043
    Counsel for Defendants
    GMAC Mortgage, LLC

Martin C. Bryce, Esq.
Robert P. Duffield, II, Esq.
BALLARD, SPAHR, ANDREWS &
INGERSOLL, LLP
Plaza 1000 at Main Street
Suite 500
Voorhees, NJ 08043-4636
    Counsel for Defendant
    Chase Home Finance, LLC

Mark D. Marino, Esq.
KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS
One Newark Center
10th Floor
Newark, NJ 07102
    Counsel for Defendant
    CitiMortgage, Inc.

**SIMANDLE**, District Judge:

Plaintiffs Deborah Lind, Patrick Lind Sr., Patrick Lind Jr., Eileen Fisher, Daniel Cullen, Tricia Curiale, Sandra Valdez, and Charles Heineman, were all "investors" in an alleged mortgage rescue scheme orchestrated by Defendants Brian Mammoccio, Donna Fisher, and their companies Defendants New Hope Property, LLC ("New Hope") and American Home Lending ("AHL") (collectively, "New Hope Defendants"). Presently before the Court are motions to dismiss submitted by five banking and lending companies, Defendants Wells Fargo Bank together with Wachovia Mortgage [Docket Item 19], GMAC Mortgage [Docket Item 22], Chase Home Finance [Docket Item 10], and CitiMortgage [Docket Item 7] (collectively, "Mortgage Company Defendants"[1]), all also named as defendants in this action, but with virtually no details regarding their alleged involvement in unlawful or otherwise actionable conduct. As will be explained at length below, the Court finds that Plaintiffs have failed to state claims against the Mortgage Company Defendants for which relief may be granted.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

As alleged, Defendants Mammoccio and Fisher "solicited their family members and friend to participate in a foreclosure and/or

---

[1] Two other mortgage companies, Freedom Mortgage Corporation and RCS, are also named as defendants, but neither has moved to dismiss and so the Court does not include them among the Mortgage Company Defendants.

bankruptcy rescue program through which Plaintiffs would invest
with [Defendant] New Hope Property, LLC and help purchase
properties from defaulting/distressed homeowners."  (Compl. ¶ 1.)
The New Hope Defendants "created and marketed" the scheme,
whereby Plaintiffs purchased homes from distressed homeowners,
with the understanding that the homeowners would remain in their
homes under a lease and then repurchase the home after New Hope
had resolved the homeowners' financial difficulties.  (Id. ¶¶ 39-
44.)  AHL "handled, processed, and funded" all financial matters
for this scheme "as broker, agent, lender or mortgage service
provider and subsequently sold, transferred or assigned [the
mortgages] to other named Defendant financial lending
institutions."  (Id. ¶ 2.)

Plaintiffs allege that the New Hope Defendants "targeted"
Plaintiffs based on their familial and friendly relationships
with Mammoccio and Fisher and that the New Hope Defendants made
numerous misrepresentations in order to "lull Plaintiffs into a
mistaken belief that the program was legal and their investment
and credit was safe."  (Id. ¶¶ 44-48, 65.)  "Defendants New Hope,
Mammoccio, American Home Lending and Fisher all made affirmative
representations to Plaintiffs that through the program,
Defendants and the distressed homeowners would come up with a
sale price for the home that [would] enable Defendant New Hope to
repair the distressed homeowners' bad credit by paying off the

3

property's mortgage as well as the distressed homeowner's debts with the equity from their home." (<u>Id.</u> ¶ 44.)  The New Hope Defendants also represented to Plaintiffs that during the first twelve months of Plaintiffs' investment, "New Hope would pay all the properties' mortgages, taxes and utilities." (<u>Id.</u> ¶ 45.) The New Hope Defendants assured Plaintiffs that the program would earn them a "lump sum payment of approximately $7,000 per house" and help to improve Plaintiffs' credit. (<u>Id.</u> ¶ 46.)

The New Hope Defendants failed to meet their promises.  They did not make the mortgage and tax payments, did not repair the distressed homeowners' credit, and did not secure new financing for the homeowners so that the homeowners were unable to repurchase their homes. (<u>Id.</u> ¶ 58.)  Instead, the New Hope Defendants submitted falsified credit and loan applications on behalf of Plaintiffs without Plaintiffs' knowledge in order to obtain artificially inflated loans. (<u>Id.</u> ¶¶ 6, 62-63, 68, 76.) AHL and Fisher secured and processed Plaintiffs' loans and then sold those loans on secondary markets. (<u>Id.</u> ¶¶ 2, 75.)  The New Hope Defendants "placed Plaintiffs in unaffordable, unsupported, overvalued and unconscionable loans as a result of inflating home appraisals, misrepresenting home values, failing to disclose property condition, and misrepresenting Plaintiffs' income and asset figures to deceive primary and secondary lenders and market purchasers of loans so Defendant[s] could extract even more money

4

for themselves." (Id. ¶ 70.)  After paying off the existing mortgages, New Hope retained approximately $2,608,307 in excess funds.  (Compl. ¶¶ 51, 56; Compl. Exh. A.)

At some unspecified time, the New Hope Defendants "advised Plaintiffs that the program was over and Defendants would not make any payments on the properties, would not secure any new financing, the distressed homeowners would not repurchase the homes and Plaintiffs should try to either collect money from the distressed homeowners living in the homes or sell the house." (Compl. ¶ 59.)

According to Plaintiffs' complaint, the Mortgage Company Defendants played some role in the above scheme.  Yet their role appears to be limited to that of secondary lender, (id. ¶¶ 2, 75), and they too were allegedly the target of the New Hope Defendants' fraud, (id. ¶¶ 6, 62-63, 68, 70, 76).  Many of the allegations in the complaint describe the conduct of "Defendants" collectively, though often it is obvious that the allegations refer only to the New Hope Defendants.[2]  The only individualized

---

[2] For example, paragraph 44 states that "Defendants New Hope, Mammoccio, American Home Lending and Fisher all made affirmative representations . . ." regarding the scheme, while paragraph 45 begins generally "Defendants also represented . . ." It is clear that "Defendants" in paragraph 45 only refers to the New Hope Defendants.  (Compl. ¶¶ 44-45.)  Similarly, paragraph 51 alleges generally that "Defendants secured the sale of these subject properties to Plaintiffs herein and procured mortgages in Plaintiffs' names in excess of $4,791,133.  Defendants then paid off existing mortgages and liens on the subject properties and retained for their own pecuniary gain and financial benefit

mention of any of the Mortgage Company Defendants comes at the beginning, where they are listed as parties, with each described as "a banking and/or equal housing lender who is in the business of issuing, underwriting, lending and/or servicing residential mortgages . . ." (Id. ¶¶ 23-27.)  The final paragraph of the factual recitals makes a clear collective reference to the Mortgage Company Defendants, stating, "The named Defendant lenders specialize in reviewing and processing mortgage applications and loan underwriting; they perform risk evaluation, loan to value analysis and repayment terms and conditions and they are prime and sub prime lenders engaging in legitimate and lawful loan transactions."  (Id. ¶ 87.)

In their omnibus opposition to the Chase and CitiMortgage motions (Plaintiffs have not opposed the motions of GMAC or Wells Fargo and Wachovia), Plaintiffs continue to emphasize that their claims arises from "a mortgage rescue scheme that was created, operated and processed by Defendants Mammaccio, Fisher, New Hope and American Home Lending." (Pl. Opp'n at 2.)  The Mortgage Company Defendants are at fault, according to Plaintiffs, because the defendants did not use "due diligence" when issuing loans to Plaintiffs and failed to provide paperwork directly to Plaintiffs

---

Plaintiffs' loan funds in excess of $2,608,370. (See Exhibit A)"
Exhibit A, however describes the $2,608,370 as "Cash to New Hope"
and it is clear, not just from the exhibit but from the context
of Plaintiffs' complaint, that "Defendants" again only refers to
the New Hope Defendants.  (Compl. ¶ 51; Compl. Exh. A.)

(instead of the New Hope Defendants).

On July 29, 2009, based on the above allegations, Plaintiffs filed suit against the New Hope Defendants, the Mortgage Company Defendants, and other alleged players in the scheme. Against all the defendants, Plaintiffs assert the following causes of action:

- Count I: Violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-68, based on the alleged predicate act of wire fraud.

- Count II: Common law fraud

- Count III: Unconscionability

- Count IV: Conversion

- Count V: Violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617.

- Count VI: Violations for the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, for which Plaintiffs seek to "rescind their transactions with Defendants."

- Count VII: Civil conspiracy to defraud Plaintiffs

- Count VIII: Violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -184.

## II.  DISCUSSION

### A.  Standard of Review

In deciding the Mortgage Company Defendants' motions to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d

224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ---U.S. ---, 129 S. Ct. 1937, 1949 (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1950.]  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> [] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.  <u>See Phillips</u>, 515 F.3d at 234-35.

<u>Fowler</u>, 578 F.3d at 210-11.

"In deciding motions to dismiss pursuant to Rule 12(b)(6),

courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

**B.   Sufficiency of the Pleading under Rule 9(b)**

Much of the Mortgage Company Defendants' arguments focus on Plaintiffs' failure to make any specific allegations against the individual banking defendants and their failure to highlight what role, if any, the Mortgage Company Defendants played in the scheme allegedly orchestrated by the New Hope Defendants.  The enigmatic quality of Plaintiffs complaint, as least as to their charges against the Mortgage Company Defendants, is most significant for those claims that must be pled with particularity pursuant to Rule 9(b), Fed. R. Civ. P.  For the reasons expressed below, the Court finds that Plaintiffs have failed to adequately plead their RICO, fraud, and CFA claims against the Mortgage Company Defendants.

Many of Plaintiffs' claims sound in fraud and consequently must meet the heightened pleading requirements of Rule 9(b), which states, "In allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral

and fraudulent behavior." <u>Lum</u>, 361 F.3d at 223-24 (internal citation omitted).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).  Plaintiffs' charges of fraud,[3] wire fraud[4] as the predicate act for a RICO violation,[5] and Plaintiffs' CFA claim which sounds in fraud,[6] all must meet the stringent pleading restrictions of Rule 9(b).  <u>Frederico</u>, 507 F.3d at 200 (Rule 9(b) applicable to claim for fraud under New Jersey law); <u>Lum</u>, 361 F.3d at 223-24 (Rule 9(b) applicable to RICO predicate

---

[3] "To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." <u>Frederico</u>, 507 F.3d at 200.

[4] The elements of mail or wire fraud are: (1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent.  <u>United States v. Pharis</u>, 298 F.3d 228, 234 (3d Cir. 2002).

[5] A civil RICO claim requires a plaintiff to establish four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity or "predicate acts."  <u>Sedima, S.P.R.L v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

[6] "To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." <u>Frederico</u>, 507 F.3d at 202.  Plaintiffs' CFA claim is based on the allegation that Defendants "committed unconscionable commercial practices, made misrepresentations, committed acts of deception, fraud and false pretenses . . ."  (Compl. ¶ 147.)

act of wire fraud); <u>Dewey v. Volkswagen AG</u>, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (CFA claims sounding in fraud are subject to particularity requirements of Rule 9(b)); <u>Naporano Iron & Metal Co. v. American Crane Corp.</u>, 79 F. Supp. 2d 494, 509-11 (D.N.J. 1999) (same).

Plaintiffs' complaint fails to put the Mortgage Company Defendants on notice of the "precise misconduct" that forms the basis of the fraud, RICO, and CFA claim.  Instead, Plaintiffs have alleged a mortgage rescue scheme orchestrated by the New Hope Defendants without any specific allegations regarding fraud or misconduct on the part of the Mortgage Company Defendants. While collective pleading (i.e. allegations that refer to "Defendants" as a single unit), might be sufficient to satisfy Rule 9(b) in some circumstances, in the present case general allegations regarding "Defendants" are entirely insufficient because it is evident from the complaint that the defendants are not similarly situated and did not engage in similar (let alone identical) conduct.

The complaint draws significant distinctions between the New Hope Defendants and the Mortgage Company Defendants and provides no basis for concluding that the Mortgage Company Defendants, who are six separate companies that allegedly provided funding for twenty separate properties, can be considered a single unit.  On reviewing the complaint, the Court cannot determine what

fraudulent or unlawful conduct each of the Mortgage Company Defendants[7] are actually alleged to have engaged in, especially where all affirmative misrepresentations to Plaintiffs allegedly came from the New Hope Defendants, (id. ¶¶ 44-45), the only specific allegations of fraud state that the Mortgage Company Defendants were the <u>victims</u> of misrepresentations made by the New Hope Defendants, (id. ¶¶ 6, 62-63, 68, 70, 76), and the allegedly unconscionable loan agreements were procured by AHL and Fisher, not the Mortgage Company Defendants, (id. ¶¶ 2, 75).  Plaintiffs have failed to inject any precision (let alone the date, time and place of the alleged fraud) into their fraud claims against the Mortgage Company Defendants and this failure to meet the requirements of Rule 9(b) justifies dismissal of Plaintiffs' fraud, CFA,[8] and RICO[9] claims against the Mortgage Company

---

[7] The Court observes that it is compelled to refer collectively to the various mortgage companies precisely because the complaint fails to allege any specific facts regarding the separate companies.

[8] Plaintiffs' bare accusation, not stated in their complaint, that the Mortgage Company Defendants did not use "due diligence" in issuing loans is an insufficient thread on which to hang their CFA claims.  First, according to Plaintiffs' complaint the Mortgage Company Defendants played no role in the origination of these loans.  (Compl. ¶¶ 2, 75.)  Second, New Jersey courts have never recognized a cause of action for improvident lending, <u>In re Fedders N. Am., Inc.</u>, 405 B.R. 527, 551 (Bankr. D. Del. 2009), and creditor-debtor relationships do not generally give rise to a fiduciary duty, <u>Int'l Minerals & Mining Corp. v. Citicorp North America, Inc.</u>, 736 F. Supp. 587, 597 (D.N.J. 1990) ("no independent fiduciary duty is generally owed from a lender to a borrower").  Finally, given the scarcity of allegations identifying the actions and inactions of the individual Mortgage

Defendants.

_____

Company Defendants, even if improvident lending constitutes
unconscionable practices in certain circumstances, Plaintiffs
have failed to allege such circumstances here.  As a general
rule, "Bank loan officers are not detectives or social workers,
and have no obligation to investigate an apparently regular
transaction for latent defects or equities."  Howard v. Diolosa,
574 A.2d 995, 1001 (N.J. Super. Ct. App. Div. 1990).

    [9] In addition, Plaintiffs have failed to allege that the
Mortgage Company Defendants engaged in the necessary pattern of
racketeering activity under RICO.  See Tabas v. Tabas, 47 F.3d
1280, 1290 (3d Cir. 1995) ("A common thread running throughout §
1962 is that an injured party must demonstrate that the defendant
was engaged in a 'pattern of racketeering activity.'").  A
pattern under RICO requires both "relatedness" and "continuity"
of the alleged predicate acts.  Id. at 1292.  Thus, even assuming
Plaintiffs had sufficiently alleged the predicate act of wire
fraud, Plaintiffs were similarly required to allege that those
acts were continuous and related to a similar scheme.  See id.
Conduct may be continuous where there was repeated conduct over a
closed period or where past conduct shows a threat of repetition.
Id. at 1292.
    Despite Plaintiffs' conclusory allegation to the contrary,
(Compl. ¶ 98), the complaint makes clear that the fraudulent
scheme has ended.  (Id. ¶ 59.)  Though Plaintiffs continue to
allegedly suffer as a result of the scheme, the alleged predicate
acts of wire fraud have ended.  Therefore, Plaintiffs may show
continuity in the closed-ended scheme by "proving a series of
related predicates extending over a substantial period of time."
Id. (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S.
229, 242(1989)).  "[D]uration is the sine qua non of continuity."
Hindes v. Castle, 937 F.2d 868, 873 (3d Cir. 1991).  As a
consequence, the Third Circuit has consistently found "that
conduct lasting no more than twelve months did not meet the
standard for closed-ended continuity."  Tabas, 47 F.3d at 1294.
The complaint fails to allege predicate acts extending over a
period longer than one year -- in fact, Plaintiffs allege that
the New Hope Defendants began to default on their promises in
December 2008 and that the most recent misconduct occurred in
April 2009, thus covering a span of only five months.  (Compl. ¶
58.)  Absent sufficient allegations to show continuity,
Plaintiffs have failed to allege the necessary pattern of
racketeering activity under RICO.

C.    **TILA and RESPA**

Plaintiffs' claims under the TILA and RESPA likewise fail, because the credit transactions at issue do not fall within the scope of either statute.  Plaintiffs entered into these credit transactions as "investors," intending to earn a profit while the distressed homeowners remained in the homes as renters under a lease.  (Compl. ¶¶ 1, 39, 42-48; Compl. Exh. D.)  Defendants argue that such transactions are exempted from TILA and RESPA and the Court, for the reasons expressed below, agrees.

The TILA exempts credit extended for business or commercial purposes.  15 U.S.C. § 1603(1); Regulation Z, 12 C.F.R. § 226.3(a).  The RESPA includes the same exemption for business credit transactions.  12 U.S.C. § 2606(a)(1); 24 C.F.R. § 3500.5(b)(2).  The Board of Governors of the Federal Reserve System has directly addressed credit transactions to acquire rental property in its Official Staff Commentary on TILA Regulation Z:

> Non-owner-occupied rental property. Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes. This includes, for example, the acquisition of a warehouse that will be leased or a single-family house that will be rented to another person to live in.

Truth in Lending; Official Staff Commentary, 46 Fed. Reg. 50288, 50297 (Oct. 9, 1981) (as amended 75 Fed. Reg. 7658 (Feb. 22, 2010)).  Such commentary is "dispositive" unless "demonstrably

14

irrational."  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555,
565 (1980) (deferring to Federal Reserve Board opinions
interpreting TILA and Regulation Z).  Consequently, courts have
consistently held that loans obtained to purchase non-owner-
occupied rental property are for a "business purpose" and are not
covered by TILA.  Antanuos v. First Nat'l Bank of Arizona, 508 F.
Supp. 2d 466, 470-71 (E.D.Va. 2007) (no right to rescind under
TILA where loan was secured for commercial rental property and
not the mortgagors' principal dwelling); In re Fricker, 113 B.R.
856, 866-67 (E.D.Pa. 1990) (loan received by debtors in exchange
for mortgage on nonowner-occupied property was for "business
purposes," and thus was exempt from TILA); Puckett v. Georgia
Homes, Inc., 369 F. Supp. 614, 618-19 (D.S.C. 1974) (purchase of
mobile home for rental purposes exempt from TILA disclosure
requirements).

There is virtually no case law interpreting the RESPA
business purpose exemption, but the RESPA regulation incorporates
the TILA interpretation, stating in its listed exemptions:
"Business purpose loans. An extension of credit primarily for a
business, commercial, or agricultural purpose, as defined by
Regulation Z, 12 CFR 226.3(a)(1). Persons may rely on Regulation
Z in determining whether the exemption applies."  24 C.F.R. §
3500.5(2).  Thus, credit transactions to obtain non-owner-
occupied rental property are similarly exempt from the

requirements of RESPA.  <u>See</u> 46 Fed. Reg. at 50297.

It is clear from the face of Plaintiffs' complaint that the credit transactions at issue were to obtain property that Plaintiffs did not occupy, but rented to distressed homeowners as an investment.  (Compl. ¶¶ 1, 39, 42-48; Compl. Exh. D.)  As a consequence, these transactions are exempted from the requirements of the TILA and RESPA, so that Plaintiffs cannot state a claim under either statute.

**D.  Conspiracy**

The Court will dismiss Plaintiffs' conspiracy claim against the Mortgage Company Defendants, because they have not adequately alleged that the Mortgage Company Defendants made an agreement to defraud Plaintiffs.[10]  Under New Jersey law, "There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of

---

[10] Though Plaintiffs' conspiracy claim might be subject to Rule 9(b), <u>see</u> <u>Kronfeld v. First Jersey Nat'l Bank</u>, 638 F. Supp. 1454, 1468 (D.N.J. 1986) ("In actions alleging a conspiracy to defraud, the particularity requirements of Rule 9(b) must be met."), the failure to sufficiently plead fraud against the Mortgage Company Defendants does not necessarily defeat a claim of conspiracy, <u>see</u> <u>Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.</u>, 331 F.3d 406, 415 (3d Cir. 2003) ("Not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does.").  The Court will consequently analyze Plaintiffs' conspiracy allegations without applying the heightened pleading requirements of Rule 9(b).

special damages." Morganroth & Morganroth v. Norris, McLaughlin
& Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003); see Weil v.
Express Container Corp., 824 A.2d 174, 614 (N.J. Super. Ct. App.
Div. 2003) ("To establish a conspiracy, the plaintiff must
demonstrate that there was one plan and that its essential scope
and nature was known to each person who is charged with
responsibility for its consequences."). To survive the instant
motions to dismiss, Plaintiffs must adequately allege that each
of the Mortgage Company Defendants "share[d] the general
conspiratorial objective." See Weil, 824 A.2d at 614.

     Plaintiffs' conclusory allegations regarding the alleged
conspiracy, entirely unsupported by specific factual allegations
(and actually contradicted by their factual allegations), are
insufficient to render their conspiracy charge against the
Mortgage Company Defendants plausible. See Iqbal, 129 S. Ct. at
1949. Plaintiffs allege that "Defendants conspired to defraud
Plaintiffs for the purpose of having Plaintiffs purchase
distressed properties at over-valued sales prices with resulting
over-inflated mortgages for the Defendants own respective
benefits and profits . . ." (Compl. ¶ 144.) A general
allegation of conspiracy, however, will not withstand a Rule
12(b)(6) motion. Twombly, 127 S. Ct. at 1966. Such a legal
conclusion must be supported by factual allegations. Fowler, 578
F.3d at 210-11. As already discussed at length, the factual

allegations show only that the New Hope Defendants orchestrated the alleged scheme and deceived the Mortgage Company Defendants in the process.  Plaintiffs have offered no facts making it plausible that the Mortgage Company Defendants were members of a conspiracy of which they were also victims.  Plaintiffs have not plead facts sufficient to render a conspiratorial agreement plausible and so the Court will dismiss Plaintiffs' claims civil conspiracy claims against the Mortgage Company Defendants.

###### E.    Conversion

Plaintiffs have offered no argument in opposition to the Mortgage Company Defendants' motions to dismiss the conversion claim, perhaps because it is clear from the complaint that the conversion claim, though brought against "Defendants" collectively, was intended to target only the New Hope Defendants.  The Court will consequently dismiss Plaintiffs' claim for conversion against the Mortgage Company Defendants.

"Conversion has been defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" LaPlace v. Briere, 962 A.2d 1139, 1144 (N.J. Super. Ct. App. Div. 2009) (quoting Barco Auto Leasing Corp. v. Holt, 228 N.J.Super. 77, 83, 548 A.2d 1161, 1164-65 (N.J. Super. Ct. App. Div. 1988)). Plaintiffs' conversion claim is based on the fact that

"Defendants" did not make the promised mortgage and other payments on the purchased properties, instead keeping the proceeds for themselves. (Compl. ¶¶ 122-25.) It is evident from the complaint, however, that it was the New Hope Defendants who were obligated to make those payments and received the proceeds from the loans allegedly issued by the Mortgage Company Defendants. (Id. ¶¶ 44-45, 51.) In fact, it would be nonsensical to allege that the Mortgage Company Defendants that issued the loans were similarly responsible for making payments to themselves. Plaintiffs have failed to allege that the Mortgage Company Defendants unlawfully retained Plaintiffs' property and the Court will dismiss those conversion claims.

### F.   Unconscionability

Plaintiffs do not defend Count III of their complaint, entitled "unconscionability," as against the Mortgage Company Defendants. The Court finds several fatal flaws in this count. First, as a general rule the doctrine of unconscionability "acts as a shield against enforcement of an unreasonable contract and not as a sword on a claim for affirmative relief." Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 922 n.14 (N.J. Super. Ct. Ch. Div. 2002). Second, Plaintiffs do not allege that the mortgage contracts at issue were contracts of adhesion,[11] usually

---

[11]    A contract of adhesion is defined as "[a] contract where one party . . . must accept or reject the

19

a prerequisite to a finding of unconscionability.  Rudbart v. New Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 685 (N.J. 1992). Third, to the extent Plaintiffs' unconscionability is based on fraud in the inducement, Plaintiffs have not sufficiently alleged fraud on the part of the Mortgage Company Defendants, as discussed in Part II.B., supra.  Finally, Plaintiffs' conclusory, generalized allegations regarding the allegedly unconscionable terms of these mortgage agreements ("The terms and conditions of the real estate sale, valuation, and financing and subsequent loan documentation are onerous, oppressive, and one-sided and unreasonably favor the Defendants"), do not state a plausible ground of substantive unconscionability as to the mortgage agreements held by the Mortgage Company Defendants.  Without any factual allegations to support this legal conclusion that all the mortgage agreements favored the Mortgage Company Defendants in a manner that was so one-sided as to be unconscionable, the Court finds that Plaintiffs have failed to allege an adequate basis to free Plaintiffs from their contractual obligations to the

------

contract [.]"   "[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars."

Gras v. Assocs. First Capital Corp., 786 A.2d 886, 889 (N.J. Super. Ct. App. Div. 2001) (quoting Rudbart, 605 A.2d at 685-86) (internal citations omitted).

Mortgage Company Defendants under the doctrine of unconscionability.[12]  Plaintiffs have not argued to the contrary as to Count III.  For all these reasons, the Court will dismiss Count III of Plaintiffs' complaint against the Mortgage Company Defendants.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the motions to dismiss of the Mortgage Company Defendants.[13]  The accompanying Order shall be entered.


**April 13, 2010**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       United States District Judge

---

[12] Plaintiffs true gripe with these mortgages is that the debt exceeds the value of the homes.  (Compl. ¶¶ 50-51.)  Yet there is no allegation that the Mortgage Company Defendants (as opposed to the New Hope Defendants) benefitted from this disparity.  The lenders' secured interest is limited to the value of the derelict properties, yet they have lost the full amount of the money they loaned.

[13] If, before the deadline for amending pleadings under Rule 16(b)(3)(A), Fed. R. Civ. P., expires, Plaintiffs are in possession of evidence against a Mortgage Company Defendant that would cure the deficiencies in any of these dismissed counts, Plaintiffs may file a motion for leave to amend, upon due notice to counsel for the party or parties against whom Plaintiffs seek to reinstate the claim(s).  Any such proposed amended complaint should take care to identify which individual plaintiff has been harmed and which individual defendant lender is responsible.